UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-cv-60117-SINGHAL/STRAUSS

**FOUNTAIN SHOPPES, LLC,**

    Plaintiff,
v.

**GREAT AMERICAN INSURANCE COMPANY OF NEW YORK,** *et al.,*

    Defendants.
_____/

**GREAT AMERICAN INSURANCE COMPANY OF NEW YORK,**

    Third-Party Plaintiff,
v.

**EDWARD MARKOWICH and CATHY MARKOWICH,**

    Third-Party Defendants.
_____/

## ORDER

    **THIS MATTER** came before the Court upon Defendant Great American Insurance Company of New York's Motion to Exclude Expert Witnesses ("Motion"). [DE 54]. The Motion has been referred to me, pursuant to 28 U.S.C. § 636(b)(1)(A) and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, to take all action as required by law [DE 59]. I have reviewed the Motion, the Response [DE 57] and Reply [DE 58] thereto, and all other pertinent portions of the record. For the reasons discussed herein, the Motion is **GRANTED**.

1

## BACKGROUND

Plaintiff Fountain Shoppes, LLC ("Plaintiff") filed the instant action on December 20, 2023, in the Circuit Court of the Seventeenth Judicial Circuit of Florida, Broward County. [DE 1–2]. Defendant Great American Insurance Company of New York ("Defendant") then removed the case to this Court on January 19, 2024. [DE 1]. Plaintiff's lawsuit stems from an insurance dispute over coverage for damage to Plaintiff's property. [DE 16]. To help prove the extent of the damage to the property and the costs necessary to repair the damage, Plaintiff retained David Stewart ("Stewart") and Felix Anton, P.E., S.I. ("Anton") as experts in construction and engineering, respectively. [DE 54–1].

## LEGAL STANDARD

"Under [Federal] Rule [of Evidence] 702 and *Daubert*[1], district courts must act as 'gatekeepers' which admit expert testimony only if it is both reliable and relevant." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (citing *Daubert*, 509 U.S. at 589). The court's inquiry, however, is a flexible one. *Daubert*, 509 U.S. at 594. For an expert's testimony to be admissible, a party must demonstrate that the following elements are satisfied (by a preponderance of the evidence):

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

---

[1] *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

Fed. R. Evid. 702.  While an analysis of the foregoing elements may necessarily entail some overlap, the concepts of qualification, reliability, and fit or helpfulness are nonetheless distinct concepts that should not be conflated.  *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003).

"The proponent of expert testimony always bears 'the burden to show that his expert is qualified to testify competently regarding the matters he intend[ed] to address; [ ]the methodology by which the expert reach[ed] his conclusions is sufficiently reliable; and[ ]the testimony assists the trier of fact.'"  *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (quoting *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1257 (11th Cir. 2002)) (alterations in original) (internal quotations omitted); *GS Holistic, LLC v. Mr. Smokey Corp.*, No. 23-20599-CV, 2024 WL 4653788, at *1 (S.D. Fla. June 5, 2024) ("The party offering the expert testimony carries the burden of laying the proper foundation for its admission, and admissibility must be shown by a preponderance of the evidence.").

In exercising its gatekeeping role, a court should not "make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech.*, 326 F.3d at 1341.  Instead, a court should analyze the methodology of the expert at issue.  *Id.; see also Daubert*, 509 U.S. at 595 ("The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.").  That is because "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.  In other words, the gatekeeper role of the court "is not intended to supplant the adversary system or the role of the jury." *Quiet Tech.*, 326 F.3d at 1341 (quoting *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001)).

## ANALYSIS

Defendant raises three arguments in support of striking Plaintiff's experts. First, Defendant contends that Plaintiff's expert disclosures were untimely. [DE 54] at 4. Second, Defendant argues that Plaintiff's expert disclosures were insufficient under Federal Rule of Civil Procedure 26. *Id.* at 7. Finally, Defendant asserts that Plaintiff's experts' testimony does not satisfy the *Daubert* standard for admissibility. *Id.* at 10.[2]

As a preliminary matter, I note that Plaintiff's Response almost entirely fails to address Defendant's *Daubert* arguments.[3] Indeed, the Response fails to address any of the *Daubert* factors, except in vague, conclusory fashion. This alone could be grounds for granting the Motion. *See Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) ("[A] party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed.") (quoting *Kramer v. Gwinnett County, Georgia*, 306 F. Supp. 2d 1219, 1221 (N.D. Ga. 2004) (alteration in original)); *see also Ewing v. Carnival Corp.*, No. 19-20264-CIV, 2023 WL 2524530,

---

[2] The Court will only address this third argument for purposes of this Order. Defendant's first two arguments, regarding timeliness and sufficiency of Plaintiffs' expert disclosures and reports, are themselves untimely and improper. To the extent the Motion is based on those arguments, which seek relief pursuant to Rules 26 and 37, it is a discovery motion. Indeed, the Court's Discovery Procedures Order ("DPO") explicitly explains that "[d]iscovery motions encompass any motion seeking relief under Rule 26 or Rule 37, including . . . motions to exclude or strike an expert who was not timely disclosed (which is different from a *Daubert* motion, which is not a discovery motion)." [DE 19] at 5 n.2. The DPO, as well as the Local Rules, are clear that any party seeking the Court's intervention concerning a discovery dispute must do so within twenty-eight days of the date when the issue was first raised with the opposing party. *Id.* at 4; S.D. Fla. L.R. 26(g)(2). Defendant admits that it was aware of Plaintiff's untimely disclosures back on September 29, 2024, and aware of the supposed insufficiency of them on December 12, 2024. [DE 54] at 6, 9. Yet it chose not to raise the issue with the Court until now, well past the twenty-eight-day timeline. Moreover, the Court's DPO specifically states that **"[n]o written discovery motions concerning discovery disputes between parties shall be filed unless specifically authorized by Order**." [DE 19] at 5 (footnote omitted). Thus, Defendant's request to strike Plaintiff's experts based on untimeliness and insufficiency are untimely and unauthorized discovery motions.

[3] Plaintiff's Response is also replete with red herrings and other grievances entirely unrelated to the merits of the Motion.

at *3 (S.D. Fla. Mar. 15, 2023) ("A party's failure to meaningfully respond to the opposing party's responsive counterarguments constitutes a concession of the counterargument's persuasiveness."); *Guzman v. City of Hialeah*, No. 15-23985-CIV, 2016 WL 3763055, at *3 (S.D. Fla. July 14, 2016) ("A plaintiff who, in her responsive brief, fails to address her obligation to object to a point raised by the defendant implicitly concedes that point.").

In the few sentences where Plaintiff makes some attempt to mention its experts' qualifications or the sufficiency of their methodology and factual bases, Plaintiff only generally refers to the expert's deposition (for Stewart) or report or CV (for Anton), without citing to any particular part of those materials or providing any substantive analysis. *See*, *e.g.*, [DE 57] ¶¶ 24, 36, 38. Notably, while the Response complains in multiple places that Defendant did not seek to take Anton's deposition, Plaintiff has failed to provide any affidavit or proffer of testimony that would further explain Anton's opinions or the facts and methodology on which he based those opinions beyond what was included in his expert disclosure and report. Similarly, Plaintiff has not provided any further proffer of testimony from Stewart that would supplement his deposition. The lack of a substantive response, combined with the relatively scant information Plaintiff has provided about its experts in the record, make it difficult for the Court to conclude that Plaintiff has met its burden of establishing its experts' qualifications, reliability, and helpfulness.

Regardless, upon review of the experts' disclosures, reports, deposition testimony, and other exhibits in the record, I find that Plaintiff has failed to carry the burden of demonstrating that its experts satisfy the *Daubert* standard for admissibility.

### I.   David Stewart

It is not entirely clear from Plaintiff's expert disclosure how Plaintiff defines Stewart's area of expertise nor what opinion testimony Plaintiff seeks to introduce through him. While Plaintiff's

expert disclosure makes some attempt to summarize Anton's opinions, as to Stewart Plaintiff only refers to Stewart making an (at the time as-yet-completed) physical inspection of Plaintiff's damaged property and making a "complete estimate for repair." [DE 54–1] at 2–3. From his deposition testimony, Stewart appears to be put forth as an expert in "construction." [DE 54–4] at 64.[4] From Plaintiff's response to the Motion, it appears that Stewart is expected to "testify as to what repairs were done to the property in order to bring it back to pre-loss condition and how much money the Plaintiff paid him for the job." [DE 57] ¶ 27; *see also id.* ¶ 30 ("Mr. Stewart is expected to testify as to the price Plaintiff paid to complete most repairs of the damaged columns of the property and what other repairs were still pending if any."). While significant portions of such testimony may simply be factual (e.g. Stewart's observations of the damaged site, the work Stewart performed, and the amount he was paid), it appears that Plaintiff seeks to elicit Stewart's expert opinion about the necessity of the repairs he performed and the appropriate cost of those repairs.

      a. **Stewart's Qualifications**

Defendant argues that Stewart is not qualified to provide expert testimony. Specifically, Defendant argues that "Stewart lacks the requisite knowledge, skill, experience, training, or qualifications to offer credible opinions on construction matters." [DE 54] at 13. Plaintiff's response does not address Stewart's qualifications at all. *See* [DE 57].

"A witness is *qualified* as an expert if he is the type of person who should be testifying on the matter at hand." *Moore v. Intuitive Surgical, Inc.*, 995 F.3d 839, 852 (11th Cir. 2021). Federal Rule of Evidence 702 states that a witness may qualify as an expert based on the witness' "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "The standard for

---

[4] Citations to Stewart's deposition cite to the page number of the condensed transcript, not the page of the filed PDF itself.

qualification is not stringent, and an expert need only be minimally qualified in his or her field." *Brashevitzky v. Reworld Holding Corp.*, 348 F.R.D. 107, 114 (S.D. Fla. 2024).

The only evidence in the record regarding Stewart's qualifications comes from his deposition testimony and a printout of licensure information from the State of Florida attached by Defendant to its Motion. [DE 54–4, 54–5]. Stewart owns a construction company. [DE 54–4] at 5–6. He has had a general contractor's license in Florida since 2022. *Id.* at 6–7; [DE 54–5]. Prior to starting his own construction company and obtaining his contractor's license in Florida, Stewart worked for ten years at Exxon Mobile, starting as a multi-skilled technician. [DE 54–4] at 8. That position consisted of Stewart being a certified welder, electrician, instrument technician, machinist, and project manager. *Id.* By the end of his employment with Exxon Mobile, he was a supervisor of high-risk operations projects at a facility with over 150 employees. *Id.*

Defendant argues that, despite Stewart's background, he is not qualified as an expert in this case because his experience is relevant "in a narrow industrial context" and he does not have "any meaningful experience in residential or commercial building construction, repair estimating, or damage assessment." [DE 54] at 13. Given the scant evidence in the record, and Plaintiff's failure to address the issue, whether Stewart is qualified to serve as an expert is, at least, a close question. His most relevant experience to the issues on which he is being asked to opine is limited to less than three years working as a general contractor. That relatively short amount of time (without any further evidence in the record about the number and types of projects he and his company have undertaken) does not, by itself, qualify him as an expert. His ten years at Exxon Mobile appear to provide sufficient experience and certifications in a broad range of construction matters, in combination with his time as a general contractor, to conclude that he is knowledgeable of how a construction project involving a damaged concrete masonry unit column should be performed.

7

Whether he is sufficiently qualified to opine on the appropriate pricing for such repairs is a more difficult question, again given the lack of specific detail about his work at Exxon Mobile. However, while it is a close question, I find that Stewart's experience as a general contractor, in combination with his experience as a project supervisor and Exxon Mobile, makes him "minimally qualified" in his field of construction.

### b. Stewart's Methodology

Defendant contends that Stewart's opinions are not based on reliable principles or methods. I agree that Plaintiff has failed to meet its burden of showing that Stewart's opinions are based on reliable principles or methods.

*Daubert* requires that trial courts act as "gatekeepers" to ensure that speculative, unreliable expert testimony does not reach the jury. *McCorvey*, 298 F.3d at 1256. "This function 'inherently require[s] the trial court to conduct an exacting analysis' of the *foundations* of expert opinions to ensure they meet the standards for admissibility under Rule 702." *Frazier*, 387 F.3d at 1260 (quoting *McCorvey,* 298 F.3d at 1257) (alteration in original). While assessing the reliability of an expert's testimony, a court should consider:

> (1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the theory or technique used by the expert has been subjected to peer review and publication; (3) whether there is a known or potential error rate of the methodology; and (4) whether the technique has been generally accepted in the relevant scientific community.

*United Fire & Cas. Co. v. Whirlpool Corp.*, 704 F.3d 1338, 1341 (11th Cir. 2013) (citing *Daubert*, 509 U.S. at 593–94). These factors are not exhaustive, and they may not apply each time a party challenges the reliability of scientific testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151 (1999). But "the same criteria that are used to assess the reliability of a scientific opinion may be used to evaluate the reliability of non-scientific, experience-based testimony." *Frazier*, 387

F.3d at 1262 (citing *Kumho Tire*, 526 U.S. at 152). Ultimately, "the objective . . . is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 1260 (quoting *Kumho Tire*, 526 U.S. at 152).

In short, a trial court cannot simply take the expert's word for it. *See id.* at 1261; Fed. R. Civ. P. 702 advisory committee's note to 2000 amendment; *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (trial court need not "admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert"). If the expert's own assertions are the only connection between the conclusion and the existing data, then the expert opinion is inadmissible. *McDowell v. Brown*, 392 F.3d 1283, 1300 (11th Cir. 2004).

Here, the main problem is that there is no cogent explanation of the principles and methodology Stewart used to craft his opinions nor the analysis that he used to arrive at his conclusions. Stewart's report is a two page "proposal" containing thirty-three bullet points (only twenty of which pertain to the proposed work). [DE 54–2] at 2–3. The proposal simply states what work Stewart proposed to do if Plaintiff hired him to repair the property damage. For example, the proposal states that Stewart would:

> l. Install custom built ¼ steel pipe columns on each side of faulty concrete columns.
>
> 2. Remove the stucco ceiling, framing and pavers as needed.
>
> 3. Cut red iron girder from steel imbeds from top of concrete columns.
>
> 4. Remove Concrete columns stones and foam bands
>
> 5. Clean area completely.

*Id.* at 2. Then Stewart provides a "total bid amount" of $121,100.00. *Id.* at 3.

9

As Defendant asserts, there is "no data, no explanation, and no logical connection between the scope of work described and the lump sum number [Stewart] offered." [DE 54] at 16. The proposal gives vague bullet points describing what Stewart will do, but it does not explain why Stewart must do the stated work or what observations, information and analysis Stewart used to conclude such work was necessary. As to costs, Stewart does not specify the cost of the materials or the cost of labor for any particular item nor any other explanation for how he arrived at the lump sum total cost. Even during Stewart's deposition, Stewart was unable to provide clear answers regarding his work on the property and how he determined the cost for his work or the factors he considered. [DE 54–4] at 70–89. When asked to explain how he determined the scope and cost of repairs, he vaguely replied, "We only went off of what we saw in the field." *Id*. at 77. While he repeatedly said he had some documentation more specifically breaking down his proposed costs, he never provided it. *Id.* at 78, 83, 85–89. Without a more detailed explanation of Stewart's methodology and reasoning, admitting his opinions as expert testimony would be tantamount to the Court "simply tak[ing] the expert's word for it." *Frazier*, 387 F.3d at 1261; *cf. Predelus v. Atain Specialty Ins. Co.*, No. 21-23382-CIV, 2022 WL 11202228, *5 (S.D. Fla. Oct. 19, 2022) (concluding that construction expert's opinions were drawn from reasonable data and methodology where expert report and testimony explained that expert had conducted on-site inspection and interviews about damage, cited industry standards and practice manuals, and articulated specific construction details with costs associated with each construction task).

Plaintiff fails to meet its burden to show that Stewart's methodology is sufficiently reliable and assists the trier of fact. In response to Defendant's contentions that Stewart's methodology is inadequate and has no logical connection between the scope of work described and the lump sum number offered, Plaintiff merely states that during Stewart's deposition, Stewart "explained his

10

number came from his own inspection to the column and how he had to dismantle and provide a new safeguard for the damage columns." [DE 57] ¶ 38. But Plaintiff does not cite to any specific part of the deposition to support its argument nor otherwise explain Stewart's process or reasoning. While it is clear from Stewart's deposition testimony that he made his determinations after physical inspection of the property, Plaintiff has put forth no cogent explanation of what observations led to what conclusions or what building codes, industry standards, or other materials Stewart considered in determining what repairs were necessary. Plaintiff asserts that "Mr. Stewart explained in detail how he came to the final price verses the preliminary quote during his deposition." *Id.* ¶ 27. Yet, again, Plaintiff fails to cite any particular part of the deposition, and a review of the deposition shows that Stewart repeatedly provided no real explanation for how he calculated particular costs other than relying on "experience." *See, e.g.*, [DE 54–4] at 87–90.

Ultimately, Plaintiff fails to meet its burden of showing what principles and methodology Stewart used in forming his opinions and that those principles and methodology are reliable. Consequently, Stewart is stricken to the extent he offers expert opinion testimony.[5]

    **II.    Felix Anton, P.E., S.I.**

        **a. Anton's Methodology**

Defendant asserts that the Court should strike Anton as an expert witness because his methodology is unreliable. I agree.

Plaintiff seeks to have Anton opine that "[t]he cause of the damage to the structure of the building was a result of the vehicle impact to the building and the area around it" and explain

---

[5] This ruling does not preclude Stewart from offering *fact* testimony, to the extent it is relevant and otherwise admissible. As mentioned above, it is apparent that Stewart inspected the damaged site and performed repair work at that site. Assuming he can testify about his observations and actions without straying into expert opinion, Defendant's Motion provides no grounds for excluding such factual testimony.

11

"[h]ow the impact of the vehicle crash to the columns affected the stability of the beam that is supported by the columns." [DE 54–1] at 3. However, as with Stewart, Plaintiff fails to meet its burden to show that Anton's methodology is sufficiently reliable.

> Plaintiff's entire argument in support of Anton's methodology is as follows:
>
> Mr. Felix Anton is a professional engineer hired to inspect the property and provide a detailed report regarding the condition of the property after the vehicle impact on the columns. [citing Anton's CV and inspection report].
>
> . . .
>
> Mr. Felix Anton has sufficient underlying data upon which his opinions are based. Which is clearly outlined in his report how he and his office inspected the property after the vehicle crash.

[DE 57] ¶¶ 24, 36. This bare reference to Anton's report and two-sentence analysis is woefully insufficient to meet Plaintiff's burden. Plaintiff's failure to meaningfully respond to Defendant's argument is sufficient grounds for striking Anton as an expert witness. *See Jones*, 564 F. App'x at 434; *Ewing*, 2023 WL 2524530, at *3; *Guzman*, 2016 WL 3763055, at *3.

In any event, Anton's report (on which Plaintiff exclusively relies) does not satisfy the *Daubert* standard for admissibility because the report fails to describe any methodology Anton used in arriving at his conclusions. The report consists of five pages, the first and last of which have no substantive content. Two pages consist of four photographs of the damaged site with captions. The report's "Site Observations, Opinions, and Recommendations" section is only three paragraphs long, filling the remaining one page. *See* [DE 54–3] at 3. This limited section provides only conclusory opinions without any explanation for how Anton reached those conclusions.

For example, the report baldly states "we observed that the reported damaged column is structurally compromised and needs to be shored immediately," "that the adjacent column has also being [sic] structurally compromised and needs to be shored as well," and "that the load capability

12

and stability of the reinforced concrete beam supported by the two damaged columns have been compromised." *Id.* Despite concluding several areas of the damaged property were "structurally compromised," Anton fails to explain how he reached that conclusion. There are no tests mentioned, calculations done, or references to industry standards or codes. Instead, the report appears to purely rely on observations from visiting the property.[6] [DE 54–3] at 3. While the report includes four photographs depicting damage on the site, it does nothing to explain the import of what those photographs show or how they led to the conclusions Anton draws. Moreover, while Plaintiff's expert disclosure asserts that Anton would opine that "[t]he cause of the damage to the structure of the building was a result of the vehicle impact to the building and the area around it," the report's only mention of causation is a statement that, "In general, it [sic] our professional engineering opinion that the structural integrity of the structural components mentioned above have been compromised by the vehicle's impact." *Id.* There is no discussion or analysis whatsoever of how Anton concluded that the vehicle impact caused whatever structural issues he observed.

In short, Anton's report provides no explanation of Anton's methodology from which the Court could determine that his opinions are reliable. Plaintiff puts forth no further information or evidence to meet its burden of proving that Anton's opinions are based on adequate data and methodology. Consequently, Plaintiff has failed to meet its burden, and Anton is stricken as an expert witness.

---

[6] It is unclear if Anton even inspected the damaged property. Defendant argues that subordinate personnel conducted the inspection. [DE 54] at 17. The report states that "[p]ersonnel from our office visited the subject site on November 11, 2021[,] to evaluate the structural condition of the reported damaged CMU (Concrete Masonry Unit) column." [DE 54–3] at 3. There is nothing in the report to indicate whether Anton was one of the personnel who visited the site or if it was (as Defendant's argue) only subordinate personnel who conducted the inspection.

### III. Plaintiff's Request to Strike Defendant's Expert

In the very last paragraph of its Response, Plaintiff requests that this Court strike Defendant's expert Jose Cata ("Cata"). [DE 57] at 8–9. In support of this request, Plaintiff states that the Court should strike Cata as a witness because "Defendant refused to provide dates to schedule the deposition." *Id.* at 8. There are several deficiencies with Plaintiff's "motion," but the most prominent is that Plaintiff has sought affirmative relief through a response memorandum. The Court will not consider such a request raised in a response to a motion. *See Anderson v. Branch Banking & Tr. Co.*, 119 F. Supp. 3d 1328, 1351 (S.D. Fla. 2015) ("It is not appropriate to seek an order for affirmative relief in a response to a motion.") (quoting *Silver v. Karp*, No. 14-80447-CIV, 2014 WL 4248227, at *5 n.3 (S.D. Fla. Aug. 27, 2014)); *see also CompRehab Wellness Grp., Inc. v. Sebelius*, No. 11-23377-CIV, 2013 WL 1827675, at *7 n.20 (S.D. Fla. Apr. 30, 2013) (noting that "a response to a motion is not a motion") (citing Fed. R. Civ. P. 7); *Valencia Ests. Homeowners' Ass'n, Inc. v. Hazan*, No. 24-CV-24879, 2025 WL 807468, at *5 n.7 (S.D. Fla. Mar. 12, 2025) ("A party cannot seek affirmative relief in a response memorandum; instead, to obtain relief, the party must file *a motion* asking for that relief.").

### CONCLUSION

For the foregoing reasons, it is **ORDERED and ADJUDGED** that the Motion [DE 54] is **GRANTED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 5th day of June 2025.

*Jared Strauss*
Jared M. Strauss
United States Magistrate Judge

14